491 F.2d 651
 COLUMBIA LNG CORPORATION and Consolidated System LNG
Company, Petitioners,
v.
FEDERAL POWER COMMISSION, Respondent.
SOUTHERN NATURAL GAS COMPANY and Southern Energy Company, Petitioners,
v.
FEDERAL POWER COMMISSION, Respondent.
 Nos. 72-3122, 72-3251.
 United States Court of Appeals, Fifth Circuit.
 March 25, 1974.
 
 John F. Sisson, Richard A. Rosan, Wilmington, Del., for Columbia LNG.
 Henry P. Sullivan, Pittsburgh, Pa., Norman A. Flaningam, Washington, D.C., for Cons. System.
 Gordon Gooch, Gen. Counsel, F.P.C., Leo E. Forquer, Acting Gen. Counsel, George W. McHenry, Jr., Acting Sols., Platt W. Davis, III, John H. Burnes, FPC, Washington, D.C., for F.P.C.
 William A. Smith, Peter G. Smith, Ronald Kuehn, Jr., Penn J. Williamson, Birmingham, Ala., James J. Flood, Jr., Washington, D.C., for Southern Nat. Gas Co. and Southern Energy Co.
 Edward W. Stern, Philadelphia, Pa., for Phil. Gas Works Div. UGI Corp. amicus curiae.
 Before GEWIN, THORNBERRY and COLEMAN, Circuit Judges.
 COLEMAN, Circuit Judge:
 
 
 1
 On June 28, 1972, the Federal Power Commission promulgated its Order No. 622, whereby Columbia LNG Corporation, Consolidated System LNG Company, and Southern Energy Company were granted Certificates of Convenience and Necessity under Sections 3 and 7 of the Natural Gas Act, 15 U.S.C. 717b and 717f. By these certificates, the petitioners were allowed to import approximately 1,000,000 Mcf[1] of liquefied natural gas per day and to construct the necessary transportation and gasification facilities. This appeal asserts that the Commission's decision to require 'incremental' pricing in sales of the liquefied natural gas was not based upon substantial evidence as required by Section 19(b) of the Act, 15 U.S.C. 717r(b). We vacate the Commission order and remand for further proceedings.
 
 
 2
 Early in 1970, anticipating a short fall in domestic supplies of natural gas to meet current demand, the petitioners and their parent companies, Columbia Gas System, Inc., Consolidated Natural Gas Company, and Southern Natural Gas Company, all registered public utilities, began searching for alternative sources of fuel. After considering a variety of supplements,[2] petitioners contracted with El Paso Algeria Corporation, a subsidiary of El Paso Natural Gas Company, to purchase what they considered to be the most economically feasible alternative. Under the terms of the various agreements, El Paso Algeria was to purchase the required amount of liquefied natural gas from Societe Nationale Sonatarch, an Algerian stateowned company, and transport it to the petitioners' facilities on the East Coast of the United States. In total, the three petitioners contracted to purchase 1,000,000 Mcf of liquefied natural gas per day for a twenty-five year period beginning in 1976.
 
 
 3
 Upon reaching the United States this liquefied natural gas would be re-gasified and injected into the petitioners' transportation facilities. According to the evidence of record, this gas would be used only to service existing customers for the purpose of preventing curtailments of service.
 
 
 4
 In this time of the energy shortage and the quest for relief supplies, this case marks two rather important reference points in the effort to ease the domestic fuel problem. First, by granting the requested certificates the Commission has approved the largest importation scheme of liquefied natural gas, at the highest price, heretofore of record, $.80 per MMBtu.[3] Second, by its decision to require incremental pricing of imported fuels and the announcement that it will seriously and scrupulously review each case involving such, the Commission has, in effect, assumed an attitude of discouraging the use of imported supplements.
 
 
 5
 The controversy here arises over the Commission's requirement that the imported liquefied natural gas be sold on an incremental basis. Although something of a misnomer, the incremental marketing system ordered by the Commission provides for the sale of the imported gas by separate contracts and rate schedules. Originally, by Order No. 622, the petitioners were required to institute the following three-step program: (1) the filing of an incremental rate schedule for the separate sale of the liquefied natural gas, reflecting the commodity and transportation costs; (2) during curtailments the gas must be made available to customers who had not contracted for it; and (3) the gas could be sold only to wholesale customers who had established their own incremental schedules for separate sales to retail customers.
 
 
 6
 Immediately upon rendition of the Order, the Commission was inundated with petitions for rehearing, all alleging hardship and impossibility of performance and requesting an evidentiary hearing on these factors. The Commission responded only to the extent of hearing oral arguments.
 
 
 7
 The oral arguments consisted of two major points: (1) the administrative impossibility of implementing the incremental pricing system and (2) the advantages of the rolled-in pricing system. After argument, the Commission modified its original order[4] by eliminating the requirement of incremental pricing at the retail level as well as the requirement that liquefied natural gas be distributed to non-subscribers for that product during times of curtailment, thereby leaving only the incremental sales to pipeline and wholesale customers. Unfortunately, both Orders No. 622 and 622-A were decided by only four members of the Commission. This is particularly troublesome because in Order No. 622-A the Commission was evenly divided, two-two, on the merits of whether to retain incremental sales as to pipeline and wholesale customers.
 
 
 8
 The record supports the petitioners' position that virtually all of the evidence presented below went to show how much the price would rise, using the Commission's time-honored tradition of rolling the new prices in with the old ones while letting all customers pay their pro rata share of the costs of the supplement.[5] Petitioners contend that since all of their customers will benefit from the added liquefied natural gas they should all bear the burden. The Commission, on the other hand, contends that in the absence of incremental pricing high priority users as decreed by Commission Order No. 431[6] would have to bear part of the cost of maintaining a supply for the low priority users, thereby placing an undue burden upon them. Under the incremental method, the high priority users-- households, etc.-- would not bear a higher price burden, and those whose services would be curtailed under Order No. 431 (dated April 15, 1971) would have an incentive due to higher fuel prices to seek alternative sources of energy.
 
 
 9
 The only real evidence supporting incremental pricing comes from testimony involving a special agreement between Southern and its largest subscriber, Atlanta Gas Light Company, in which Southern would offer its customers the option of either having the price of the liquefied natural gas rolled in with the domestic or contracting separately for the service under a different rate schedule. In substance, this testimony was only an afterthought and dealt with the theoretical economic feasibility of such a program. No testimony was taken as to the administrative problems which might arise, what the cost of implementation might be, or how the public interest could best be served.
 
 
 10
 The result is that we must determine whether the Commission has met the 'substantial evidence' requirement of Section 19(b), 15 U.S.C. 717r(b); for if it has not, this Court may not affirm its action, S.E.C. v. Chenery Corporation, 1947, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995.
 
 
 11
 Substantial evidence, as defined by the Supreme Court, means more than a mere scintilla and must do more than create a suspicion of the existence of the fact to be established, N.L.R.B. v. Columbian Enameling and Stamping Company, 1939, 306 U.S. 292, 59 S.Ct. 501, 83 L.Ed. 660. 'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion', Consolidated Edison Company v. N.L.R.B., 1938, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126. 'It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury', N.L.R.B. v. Columbian Enameling and Stamping Company, 306 U.S. at 300.
 
 
 12
 It seems clear to us that the record, as compiled, fails to sustain the proposition that incremental pricing is more desirable. Certainly, ten pages of testimony out of a total record of 14,500 pages of testimony, affidavits, briefs, opinions, etc. cannot suffice to justify departing from the longstanding Commission practice of approving rolled-in pricing.
 
 
 13
 The Commission argues that the petitioners had ample opportunity to present their case, pointing specifically to the granting of oral arguments on the petitions for rehearing. In the context of this case, oral argument, lacking an adequate presentation and sifting of the evidence, with appropriate findings, is, we believe, not enough. The evidentiary hearing conducted below did not produce substantial evidence to support the Federal Power Commission's decision to use incremental pricing, and it did not explore the problems that incremental pricing would create. Therefore, we must remand for an evidentiary hearing that will examine the advantages and disadvantages of incremental pricing.
 
 
 14
 Vacated and remanded.
 
 
 
 [1]
 1,000 cubic feet
 
 
 [2]
 According to the findings of fact of the Administrative Law Judge, Algerian liquefied natural gas was a more desirable supplement than natural gas from Canada, Alaska, Mexico, Nigeria, Trinidad, Venezuela, or other Domestic Sources, gasified coal, reformed Naptha or other feedstocks such as Methanol or Oil Shale, or nuclear stimulated gas for a number of reasons-- cost, supply, availability, etc
 
 
 [3]
 1,000,000 British thermal units
 
 
 [4]
 See, Federal Power Commission Order No. 622-A
 
 
 [5]
 See Trunkline Gas Supply Company, 1949, 8 F.P.C. 250; Panhandle Eastern Pipe Line Company, 1951, 10 F.P.C. 185; American La. Pipeline Company, 1954, 13 F.P.C. 380; Trunkline Gas Company, 1959, 21 F.P.C. 704; El Paso Natural Gas Company, 1959, 22 F.P.C. 260; Kansas-Nebraska Natural Gas Company, Inc., 1961, 25 F.P.C. 448; Nucces Industrial Gas Company, 1971, 45 F.P.C. 1224
 
 
 [6]
 The Commission in Opinion No. 622 stated:
 'We may note that under our Order No. 431, issued April 15, 1971, jurisdictional pipelines are required to file curtailment plans where curtailment is necessary; and Columbia Gas Transmission, Consolidated Gas Supply & Southern Natural have all done so.'